All right, our final case for argument is 22-1585, Crawford v. U.S. Good morning, Your Honors. May it please the Court. My name is Christian Curran from the law firm of Crowell & Mooring, here representing U.S. Army combat veteran John Crawford in his appeal from the Court's denial of his claim for EJF fees. Crowell represents Mr. Crawford in conjunction with the National Veterans Legal Services Program, who depends on fee recoveries to assist veterans like Mr. Crawford. We're here today because the trial court erroneously found that Mr. Crawford was not a prevailing party under EJF, where the court found that its remand to the Board of Corrections for military records was not subjectively based on legal error. But the trial court's decision to ignore the context of the record at the time it was deciding the EJF application is at odds with the well-established law that requires review of such context when evaluating an EJF application. Mr. Crawford brought this case to the Court of Federal Claims through a complaint that outlined clear and manifest errors by the Army, both at the time of his separation and in deciding his application to the Board in 2017. Can I just ask you a preliminary question? Because there seems to be a debate between the parties on what the appropriate standard of review is. Because you're saying it's de novo, and the government says, no, no, no, it's underlying factual issues. So do you agree with that? And if so, most of what we're talking about are underlying factual issues, right? Or is it your view that it's a completely illegal question? It is our view that it is a completely illegal question. As articulated in Kelly, prevailing party questions under EJF are reviewed de novo. And this is a legal question, although there has been discussion of the facts in the briefs. And you want a reversal, not a remand. Are you seeking reversal and not remand? Yes. Okay. And you don't think a remand would be necessary because we could make all of the relevant determinations here? We do, but in the alternative, a remand could be appropriate if the Court believes that factual development needs to take place. Well, what do we need to find in order to rule in your favor on a reversal? To reverse the trial, Court, you would need to find that the context of the record shows that the remand was actually predicated on error, and therefore, Mr. Crockett is a prevailing party. And not substantially justified? Correct. Which is something different than error, right? Yes. And that was not before the Court below. But you're content for us to resolve substantial justification if you went on prevailing party? I think the Court has the authority to do that, yes. And you've adequately briefed it as far as you're concerned? Yes. On the prevailing party, of course, the judge in the Court of Federal Claims is the one who did the remand and then reviewed your application under EHAA, and she said it was not for agency error. Is that something we have to take as true, at least as to her subjective understanding as to why she remanded the case? As to her subjective understanding at the time, yes. We've obviously argued that that's not the only thing that needs to go into determining prevailing party status at the time of EHAA application, especially in this instance where the Court has retained jurisdiction and the facts. The full context of the record shows that, in actuality, when the government requested a remand and conceded that there was no fitness determination in the record, the context of that determination is that the government was admitting error at that point. But they said explicitly they were not, right? Yes, that is what the government said. To what extent should, you know, this is kind of almost subjective. I mean, they're talking about what their motivation is and they're not conceding error. What heft should we give to that position, to that one sentence? Not very much, we would submit, because it is, as you pointed out, a subjective position by the government. I mean, we... Well, you're saying they were conceding error. So where in the motion for remand would you say establishes that they were conceding error? And it would be, at best, an implicit concession of error. Yes. You acknowledge they say explicitly they're not. Yes. Appendix 43 on the remand motion, the government does explicitly start out by saying that the motion is predicated upon the interests of justice. But then they go on to say that a remand is necessary because here it is undisputed that neither a PEB nor the ABCMR have determined whether Mr. Crawford was fit or unfit for the duty at the time of his separation from the Army National Guard. Thus, even if Mr. Crawford could demonstrate an error in the ABCMR's decision or Dr. O'Donnell's decision, the likely relief would be a remand to the ABCMR to determine, in the first instance, whether Mr. Crawford was unfit for duty at the time of his separation from the Army National Guard and entitled to a disemployment. So your position is they've conceded that at least the likely relief would be a remand to the ABCMR to determine in the first instance whether, so they're conceding that wasn't done and it needed to be done and that was the error. Yes. And that's the error that we've highlighted in our complaint. This case stems from the fact that Mr. Crawford was erroneously processed in the first instance, as the Army has admitted multiple times. And had he been correctly processed, he would have been afforded the opportunity for a fitness determination. So we need to look at, while the government says the reason for this was judicial economy, judicial economy can mean a lot of things. So the next question is, well, what judicial economy? Why is it judicially economic? The government explicitly says it's judicially economic because there was no fitness determination in the record. And then we have to ask ourselves, well, why was there not a fitness determination record? Was it required? And we would submit to you, yes, that is what the board found on remand in 2019. And that is what one of the Army evaluators explicitly found was not what right looks like in the Army. It was clear error. It's no surprise that when we filed a complaint identifying this error, that the government decided to take a remand. And we believe that this is an express acknowledgement that the remand is based on that error. There was some discussion, maybe I'm thinking of a different case, but I think in the briefs about how they sought this remand before they submitted the administrative record. Are we supposed to take from that that maybe the Court of Federal Claims judge didn't have sufficient information before her? Or are we supposed to take anything from that timing of doing it before rather than after she could review the administrative record? Well, I think what you can take from it is that, yes, the administrative record had not been produced at that time. We don't fault the judge for, at that time, not expressly finding an error. Certainly, we believe we've identified the errors in the complaint, so she had that in front of her. But at the time, now we go to the time of EJIA application, when she has all of that context, we would submit that the error is then evident and should have been evident to her that at the time the government was requesting remand, it was actually, in fact, under the standard of Kelly and Davis, predicated on error. So you do a look-back in deciding EJIA. She had the opportunity to do a look-back. We think so, yes. We have to take the standard as clear that at the time of EJIA application, the full context of the record needs to be considered. You referenced judicial economy. It seems like the government wanted the court to remand, at least expressly based on judicial economy, whatever that means. But if we, taking our look-back, think that there were some interests of judicial economy that were not directly related to agency error, so essentially the remand was for mixed reasons, for judicial economy not relating to the error and the error. So it's some of both. Is that sufficient for you to meet your burden to be a prevailing party? We believe so, yes. The law set by the government even expressly acknowledges that a remand based solely on judicial economy would not, we would not be able to meet our burden if it was solely based on judicial economy. But here in your scenario where there's a mixed bag, we believe that meets the burden, yes. So that case, I forget which one it is, that implies that you're right. But have we ever expressly addressed that question of a partially for judicial economy and partially for agency error? I do not believe that has been expressly addressed. Isn't there an overlap? I mean, I'm thinking about, since you suggested how we would address it if we did. There's necessarily, maybe not in all instances, but in others, judicial economy, there's an overlap in the factors. Absolutely. I don't think there's any question that there could be economy in going back to correct an error, or economy in identifying an error. And that's why I think that it being solely based on error doesn't get you there. But if there is a mixed bag that, as I said, judicial economy in and of itself could mean anything, right? Well, that's why I'm having a hard time thinking about what would be judicial economy that's not based on error. But maybe there's, Judge Stark can probably come up with something. All right. How about in terms of the record we can look at? It's unclear to me whether the government is disputing this, but you say at the time of the EAJA application to figure out what the basis of the remand was, the judge is not limited to only the evidence that was in front of her at the time of the remand decision, right? Correct. And I think you further say she could consider everything that's in the record up until that moment of considering the EAJA application. Is that right? Yes, that's correct. And which of our authorities would you point to for that proposition? The Davis case talks about looking outside of the four corners of the remand order, and Kelly as well talks about examining the record. Those are the two primary cases that we relied on. I think also not a Federal Circuit case, but the blue case that we cite, the Court of Appeals for Veterans Claims, really articulates it well, where they talk about there's kind of two decision points, right? And there's a decision point that the EAJA fact finder has to make a decision. And the EAJA fact finder has maybe different facts than are at the time of remand. And in that case in particular, the remand order explicitly disclaimed error, said that we don't find any error. But there the court found that there was in fact an error that predicated the remand. And that's exactly the type of analysis that we think applies here. He was pro bono for a while, right? Mr. Crawford? Yes. In his first application to the ABCMR, or the board rather, in 2015, he was not represented. And certainly at the time this all happened in 2011, he didn't have legal representation. Yes, that's correct. He did not have legal representation at that time. Okay, why don't you take our remaining time for rebuttal. Let's hear from the counsel. Thank you, Rose. May it please the court. Mr. Crawford is not a prevailing party under EJA because the trial court did not remand in this case based on administrative error. Instead, the trial court granted our motion for voluntary remand over Mr. Crawford's objection based solely on judicial economy. As the trial court succinctly explained in its EJA decision, Mr. Crawford... I think my problem is both page 43 and 44 of the government's motion for voluntary remand, as opposing counsel argued, seemed to admit error and a need for remand in light of the error. Even more glaring than the statement at page 43 is the one at page 44, which just jumped out at me and kind of smacked me in the face. Accordingly, we are requesting the relief Mr. Crawford would likely receive if he successfully moved for judgment on the administrative record. That's the government admitting that we're seeking exactly the very relief he could get. If he succeeded in judgment on the administrative record, and we never conceded that he would. On page 43, you conceded that there needed to be a determination of his fitness by either P.E.B. or A.B.C.M.R. and that wasn't done, and so let's vacate remand for that purpose. There would need to be that determination in order for Mr. Crawford to be granted the relief he seeks. No, there would need to be that determination full stop, right? No, I'm sorry, the Army regulations didn't require that as part of the process? The fitness determination, no, the Army regulations didn't necessarily require fitness determination. When someone is separated for, I thought there was a clear Army regulation that did in fact require that when considering this issue. So what the A.B.C.M.R. ultimately decided is that he should have been referred to the physical disability evaluation system. The first step of a physical disability evaluation system is a medical evaluation board. That does not make a fitness determination. So in that case, if the medical evaluation board determines that he doesn't meet medical retention standards, then it would refer it to a physical evaluation board. They made that determination, right? No, a medical evaluation board never evaluated Mr. Crawford in this case. He was separated based on the evaluation of a different board, a medical duty review board, which is something separate. All right, but back to the remand thing. You say, as the Chief pointed out, on 43, it's undisputed that neither the P.B. nor the A.B.C.M.R. has determined whether he was fit or unfit for duty at the time of his separation. Correct. And then you say the likely relief, notwithstanding, even if he could demonstrate error in the Dr. O'Donnell stuff, the likely relief would be a remand. So you're not saying the absolute relief, but the government is recognizing that the likely relief of that would be remand, right? If he were successful in demonstrating error. That's the huge caveat that we put in there. Even if Mr. Crawford could demonstrate an error in the A.B.C.M.R.'s decision or Dr. O'Donnell's decision, in that case, the likely relief would be a remand to the A.B.C.M.R. to determine, in the first instance, whether Mr. Crawford was unfit for duty at the time of his separation. So we never stated that he should receive the relief of a remand on the merits. We stated that if he were successful on the merits, if the merits were actually adjudicated, which the trial court clearly stated that they weren't, then the likely relief would be a remand. So that serves judicial economy by simply allows us to bypass the merits entirely, simply get the fitness determination so that if, for two reasons, A, he could get the relief he's seeking, which is what actually ended up happening here, and then the court doesn't need to adjudicate the merits at all. Or if the court determines, or excuse me, if the A.B.C.M.R. determines that he was fit for duty, then the court will have that record to review and it can review the actual fitness determination. How would they do it? By a current exam or going back into the record back in 2010? By the records, yes. Going back into the records in 2011. The first sentence of this page 43, you say, and it's not predicated on admission of error by the United States. What do we have to do with that? I mean, whether you, I don't know. I haven't seen enough of these cases. Are there cases where the government would come in and say this motion is predicated on an admission of error of the government? Does the government ever do that? I don't know if we necessarily say that explicitly, but there may be times where we come in and say, such as the Monroe case. Are you entitled to any deference? I mean, whether or not you admit error, does that affect our decision making? Obviously, it would make it easy if you admitted error, but if you don't admit error, it's still, we look at the record and we decide what we decide, right? There's no requirement that you admit error in order for the other side to get each of these, right? There's no requirement that we admit error. That shows that we didn't concede error. It doesn't necessarily show whether or not the trial court based the remand upon error. But in this case, the trial court determined correctly that it did not base the remand upon error. And so we have no discretion, we have no authority to overturn that decision, right? We can review that decision, right? This court can review the decision, but what the court shouldn't do, what Mr. Crawford wants the court to do now, is to go back and look and make the determination that the remand obviated the need for the trial court to make. Mr. Crawford wants the court to go in now and say, there was error, he should have been given a fitness determination, and therefore he's the prevailing party. But the trial court never substantively considered that issue. The trial court granted the remand solely based for reasons of judicial economy. Is there any dispute over the fact that he was in fact discharged for failing to meet medical retention standards? That's correct. And doesn't AR 40-501, 10-25 require a PEB fitness determination for, quote, in the line of duty, it would allow him to request a PEB? No, not allow him to request, it requires a PEB fitness. AR 40-501. I don't have the exact, is there an appendix? Well, it's cited throughout, but I have it here. I'll give you my copy. My understanding is that if being separated for not in the line of duty, then the soldier can request a PEB, and that PEB will determine fitness. It will not determine disability benefits, though. If being separated in the line of duty and the soldier doesn't meet medical retention standards, then he would be referred to the physical disability evaluation system, the first step of which is the MEB, which does not make a fitness determination either. If the MEB then makes the determination after all its examinations that he fails medical retention standards, then it would go to a PEB for a fitness determination. Okay, so none of that, clearly, it's undisputed, none of that happened here. So they ultimately awarded, on what basis did he get his award of complete retroactive relief? Because we remanded for, the ABCMR is also competent to make fitness determinations. The PEB and the ABCMR can both do that. So we remanded directly to the ABCMR, or we requested that the court remand directly to the ABCMR and instruct the ABCMR to make a fitness determination, determine if he's fit for duty. Saying that a fitness determination was required. No, we never said that a fitness, I mean the remand order required a fitness determination, because we asked the court to do that on the basis of judicial economy. But the court never made a finding that a fitness determination was required. It never made a finding that it was error for there not to have been a fitness determination. But that was the ultimate finding of the Army on the remand, correct? That this all should have happened at the beginning. Well, that he should have been referred to the physical disability evaluation system. And further, I think that there was error right at the outset that this wasn't done, that the disability was not incurred in connection with the line of duty. That was the original error, correct? I don't know if the board expressly found that, but yeah, the injury was incurred in line of duty. So whether the regulations were mandatory or discretionary, the problem for you is that this all started 10 years ago with a fundamental error on behalf of the agency in saying that his PTSD was not incurred in the line of duty, when we know now it clearly was. But the trial court never made a determination. We're not talking about the trial court. That is what we know after the remand. Would you agree with that? After the remand, yes. And that's the ultimate determination of the agency, of the Army, correct? After the remand. That there was error and that he's entitled to disability retirement, yes. Because it was a line of duty and he should have been submitted to the PEB or MEB or ABCMR, right? To the physical disability evaluation system. Starts with an MEB, yes. Can I ask you, because you're emphasizing solely the same point that I discussed with your friend on the other side. Does that mean that you agree, if we were to conclude that the remand here was at least part due to agency error and not solely due to judicial economy, that he would meet his burden for a prevailing party? If the court were to determine that the remand was predicated on agency error, then yes. At least in part? Yes. Okay. But the trial court didn't predicate the remand on agency error. That's the main point here, I think, that we want to make. Sorry, Ben. And this question, I think, came up from Judge Probst. What does judicial economy mean here if it doesn't mean something affected, at least in part, by the agency error? In this case, it meant that the trial court doesn't need to determine whether or not Mr. Coffer was entitled to a fitness determination. Rather, the fitness determination is going to aid the court in one of two ways, either by if he's determined unfit and granted disability retirement, that's likely going to make the case go away, which it did, or, in the alternative, if he's determined fit for duty, then the trial court's going to have that record to review now. It can review the full case then and determine whether or not the ABCMR was rational in determining whether he's fit for duty. So why isn't that an implicit concession that the judicial economy is furthered, at least in part, because we, the Army, fear that it's likely if we force you to make this determination, according to federal claims, you're going to find that there's agency error because the government doesn't walk in and ask for a remand in all cases. So why doesn't that at least show that part of the judicial economy argument was we don't want to, we want to spare this trial court the effort because we have serious concerns, which I think you even put in your motion, we have concerns that you're going to find error here. Having concerns is not the same as conceding that the government actually erred. I mean, there's two things that the trial court really could have reviewed here had this gone to the merits. One is the ABCMR's decision of what relief to grant him after finding he was entitled to partial relief, and then Dr. O'Donnell's decision that he did not fail medical retention standards at the time that he was separated. We have not conceded that either of those decisions was erroneous here. Well, isn't there a third thing that the trial court could have found? In his complaint at page 12, he also alleges that as acknowledged by the ABCMR, the Army failed to properly notify Mr. Crockett that his actions entitled him to request a hearing in front of the PED prior to his separation. This is the same Army regulation I brought up with you before. So he alleges that there was a failure of the Army to notify him, and then in the relief slot, he expressly requests the PED hearing with the medical fitness determination. So isn't the third thing that the trial court could have found in this case is that the Army erred by not informing him that he was entitled to this fitness determination, according to this Army regulation? Well, but the trial court has to review the ABCMR decision. I think the ABCMR noted that argument. So if the trial court says that the relief the ABCMR granted was improper, based on his argument that he should have been notified of the possibility of requesting a fitness determination by the PED, I suppose the trial court could have reviewed that on the merits in the context of the ABCMR decision. But ultimately, it's the ABCMR decision, and then in this case, Dr. O'Donnell's later decision, that would be reviewed by the trial court. And we didn't concede that either of those decisions were improper. Can I ask you, this is a legal question, and I should know it, but we don't get very many EJIA cases, so I don't know it off the top of my mind, which is the statute requires the court find that the position of the United States was substantially justified. We keep talking about error, that we have to establish that there was error. Is there a difference between substantially justified and error? Yes, the substantial justification question is a separate question. If Mr. Croft, and you don't reach the substantial justification question unless the plaintiff is a prevailing party, the question is whether even though the court found against the government in the case, was the government's position nevertheless substantially justified? Was it a reasonable and long fact? In this case, I just don't remember. Are you arguing that even so, the position of the U.S. was substantially justified? Are you making that argument? That is our position, yes. We took that position before the trial court. The trial court didn't address it because it determined that Mr. Crawford was not a prevailing party. We've argued in the alternative that even if the court finds that Mr. Crawford is a prevailing party, that it should affirm on the alternative basis that our position was substantially justified. You have the burden on that, but you're content for us to decide that in the first instance based on the briefing to us. Is that right? Yes, that's correct. If we were to conclude that there was error and that you basically implicitly admitted error, just assume that. I know you argue against that, but if we were to conclude that you admitted there was error in the government's failure to give him this fitness evaluation and that's what the remand was for, what would be your substantial justification then? The court stated that the government needs to demonstrate that it hasn't taken tenuous positions throughout the litigation. In this case, since the case has gone to the ABCMR, the government has been working to try to rectify any errors in Mr. Crawford's separation. The ABCMR granted him relief in the form of processing that could have led to a disability retirement. Dr. O'Donnell ultimately determined that he didn't fail medical retention standards, so he shouldn't be referred to the physical disability evaluation system. We've explained in our briefing why we believe that that was a reasonable determination. Once it came to the trial court, we sought a remand. Some lightbulb must have gone on. They filed an appeal to the Court of Federal Claims. What happened between the time you prevailed below, or he lost below, and the time that you asked for a remand? Well, look, we looked at the facts of the case, and we stated this in our reply brief explicitly. Let me find the exact language here. We looked at the facts, and this is a page, Appendix 59, and so you've got a situation where Mr. Crawford was separated because he failed medical retention standards. Dr. O'Donnell comes in later and says, no, he actually met medical retention standards in 2011. We're not saying that Dr. O'Donnell was wrong or even unreasonable, but nevertheless, we've got these two conflicting views on whether he met medical retention standards. Wouldn't it make sense to send this to the ABCMR to make the ultimate fitness determination and allow the court to review that? If the fitness determination is, I guess you'd call it unfavorable to Mr. Crawford, even though he would be found fit in that situation. And we said this, although we do not concede that the ABCMR's choice of remedy was an abuse of discretion or that Dr. O'Donnell's subsequent determination was irrational, we recognize the unusual posture of this case and believe that a fitness determination by a competent board would be in the interest of justice. Because there was a conflict in the record, and you couldn't justify making it just good for you. I mean, thank goodness, this is the government arguing here. You've recognized that you couldn't make an argument because of the conflicting testimony. You couldn't make a good faith argument. No, no, that's not what we – we didn't recognize that we couldn't make an argument. We expressly stated we're not conceding that Dr. O'Donnell's determination on the medical retention standards was irrational. But what we are saying is that in light of the fact that we've got these conflicting decisions, it's the interest of justice that it makes sense for why don't we just have the board make the fitness determination? Why debate the merits about whether the board should have made a fitness determination earlier or whether a PEB, he should have gotten a PEB early? We don't need to get into any of that. Why not simply give, have the board do a fitness determination, and then that obviates the needs to decide the merits? And what Mr. Crawford, the standard Mr. Crawford wants us to do now, is even though the trial court based its remand order on judicial economy and not on agency error and expressly stated that she never substantively considered the merits of the case, now Mr. Crawford is saying the trial court should have at the aegis stage now gone and done the analysis that the remand obviated the need for it to do. And that's not what Thompson says. That's not what Vaughn says. And so for those reasons, the trial court's judgment should be affirmed. Okay. Thank you. Thank you, Your Honors. May it please the Court. I want to make two main points of rebuttal. First, I think the line of questioning regarding the error is exactly right. There was an error because Mr. Crawford was not afforded process and an error that he was not medically retired. I mean, the board had the authority to do that in 2017 when the case was before it, and it chose neither of those paths. Instead, it sent Mr. Crawford on some extra-regulatory detour to Dr. O'Donnell. That was all clearly laid out in our complaint, and that goes to the question of whether the lack of a predicate fitness determination was an error. The second point on substantial justification, my friend talked a little bit about that, and I want to address that directly. The standard on substantial justification, as articulated in the briefs, is the matter as a whole. It's not just the position when it comes to litigation in the government. So we have to look at what happened at the agency beforehand, what happened at the ABCMR beforehand. No reasonable person could look at this course of conduct and decide that the government's position as a whole was substantially justified. Contemporaneous documentation in the record at the time of his discharge acknowledges that he should have been processed in accordance with the line-of-duty procedures. The Army admitted he was not. He should have been, even in those procedures, he should have been afforded a PEB process. He was not. He then had to pro se try to appeal this to the board in 2015, where he put these issues, you know, by himself, good for him, squarely in front of the board, and the board punted. It went outside of regulation. It arbitrarily and capriciously decided that and resulted in him not getting either of the things that he was entitled to. Then we had to bring this litigation. We had to go and remand. We had to fight on remand through multiple rounds of additional medical opinions, all for the board, the same board, to decide, you know what, there was enough evidence in this record at the time of his discharge to determine two things. One, substantial injustice, those are the board's words, occurred. And two, that he should have been found unfit and medically retired based on the evidence at the time of service separation. I would submit to you that this is not only a case where the government cannot prove that they were not substantially justified, but this is a textbook case of why EJIA should apply and is consistent with the court's opinions on EJIA and the purpose behind EJIA, which is not to deter veterans from bringing their cases. If Mr. Crawford did not have the good fortune to obtain our representation, these clear errors may never have been found. And it is only fair at this point that because we have fully prevailed, because the government remanded really, in fact, on the basis of these errors, that Mr. Crawford receive his attorney's fees and that those fees can be passed to the National Veterans Legal Services Program to help further veterans like Mr. Crawford. Thank you. Thank you, and I hope counsel will take this case under submission.